UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00124-RJC

| | |
|---|---|
| LATORIA NEAL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's "Motion for Summary Judgment," (DE 11), and Defendant's "Motion for Summary Judgment," (DE 13).

Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is not supported by substantial evidence. Accordingly, the Court will **GRANT** Plaintiff's Motion for Summary Judgment; **DENY** Defendant's Motion for Summary Judgment; and **REMAND** this matter for further proceedings consistent with this Order.

## I. BACKGROUND

On May 15, 2016, Plaintiff Latoria Neal ("Neal") filed an application for disability with the Social Security Administration ("SSA") for schizophrenia, depression, anxiety, post-traumatic stress disorder, bipolar disorder, autism, and a herniated disc, alleging an onset date of April 22, 2016. (Tr. 18, 182–86, 217). Upon reconsideration after denial, a hearing was held before an Administrative Law Judge ("ALJ") on October 11, 2018. Neal appeared and testified as well as an impartial vocational expert. (Tr. 36–68). The ALJ found that Neal was not disabled. (Tr. 15–31).

To make this determination, the ALJ conducted a five-step sequential evaluation. At step one, the ALJ found that Neal had not engaged in substantial gainful activity since the alleged onset date. (Tr. 20). At step two, the ALJ found that Neal had a combination of severe impairments including degenerative disk disease, schizophrenia, anxiety, depression, and somatoform disorder. (Tr. 21). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled one of the conditions listed in 20 C.F.R. §404, Subpt. P, App. 1. (Tr. 21–23). Before moving to step four, the ALJ found that Neal had the residual functional capacity ("RFC") to perform light work "except she is limited to simple routine repetitive tasks performed in two-hour segments." (Tr. 23). The ALJ further explained:

> This work would need to [be] done in a stable work setting at a non-production pace where there would be no contact with the public. She could have occasional contact with coworkers and supervisors, but the work itself could not require teamwork for task completion. The work should also not require conflict resolution or crisis management.

(Tr. 23). At step four, the ALJ found that Neal could not perform any past relevant work, but found at step five that Neal could perform jobs that existed in significant numbers in the national economy, such as a laundry folder, inspector and hand packager, and shipping-and-receiving weigher. (Tr. 30–31).

After exhausting her administrative remedies, Neal brought the instant action for review of Defendant's decision denying her applications for disability insurance benefits under Title II, of the Social Security Act. (DE 1). Neal argues that the ALJ erred by (1) improperly weighing opinion evidence and (2) by failing to define the term "non-production pace" in the RFC assessment. (DE 12). In response, Defendant argues that the ALJ's decision was proper. (DE 14).

2

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so

3

long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

### A. Opinion Evidence

Neal argues the ALJ failed to properly weigh opinion evidence and, as a result, omitted the limitation of "short and simple instructions" from the RFC assessment without an adequate explanation. Neal further argues that the improper RFC assessment, which lacked substantial evidence, similarly infected the ALJ's step five finding, and remand is required. (DE 12 at 20). Defendant disagrees. (DE 14).

While it is unclear what opinion evidence Neal refers to in her summary judgment argument, the Court will assume for purposes of this order the opinion evidence relates to Jacquelyn Harrison, Ph.D., and James Brown, Ph.D.—two state agency psychological consultants who did not personally evaluate Neal—as these are the only two cited by Neal. In the RFC analysis, the ALJ spent ample time listing the factual evidence provided in the reports from Dr. Harrison and Dr. Brown. After listing the factual evidence provided in each report, the ALJ then separately addressed the creditability of each person's opinion evidence separately from the factual evidence. (Tr. 23–29).

For Dr. Harrison, the ALJ noted that Dr. Harrison opined that Neal "is able to understand and remember short and simple instructions, and maintain attention and concentration for two hours at a time in an eight-hour workday in a relatively undemanding and stable work setting." (Tr. 29). The ALJ also noted that Dr. Harrison believed that Neal "is able to perform simple routine repetitive tasks in settings that do not require intensive interpersonal relating." (Tr. 29). The ALJ then found that Dr. Brown, another state agency psychological consultant, adopted the

4

same assessment as Dr. Harrison. (Tr. 29). The ALJ "accorded only some weight to these opinions" because "neither psychological consultant had the opportunity to review the hearing level evidence, which included psychiatric intakes and hearing testimony relating to the nail technician course." (Tr. 29). The ALJ provided the following factual evidence regarding the nail technician course:

> [C]laimant testified that she completed school for nail technician in January 2018 through vocational rehabilitation. She states that this program required 300 hours for completion, or about two months. She testified that the program went well . . . . The claimant stated that there were five to six students in the class. She reported that her class time varied, but that she would stay for about six hours. She testified that this program involved on-hand training with people who came into the school to get their nails done. She further testified that this went "ok" and that the teacher was aware of her anxiety.

(Tr. 28). As a result of this evidence, which was part of the reason the ALJ "accorded only some weight" to the opinion evidence of Dr. Harrison and Dr. Brown, the ALJ noted that Neal is "capable of simple routine repetitive tasks performed in two-hour segments."

In making the RFC decision, the ALJ listed the factual and opinion evidence, provided his creditability determinations, and rendered a decision by connecting the evidence to his conclusion through a logical explanation. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("[T]he ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion.") (internal quotations omitted); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (A "residual functional capacity assessment must include a narrative discussion describing how the evidence support each conclusion.") (quotations omitted). The ALJ did not include opinion evidence from the doctors on short and simple instructions. Without providing legal support, Neal argues that the ALJ must provide an explanation as to why each piece of opinion evidence was not included. Nonetheless, here the ALJ explained that he "afforded only some weight" to Dr. Harrison's and Dr. Brown's opinions because of contradictory record

5

evidence regarding the nail technician class and because both doctors did not review the evidence from the hearing. Thus, the ALJ explained why he did not include the opinion evidence from the two doctors, negating Plaintiff's argument.

As the RFC is supported by substantial evidence, Neal's claim that the ALJ's finding at step five is unsupported by substantial evidence also fails.

B.      **Non-Production Pace**

Neal next argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to define what he meant by "non-production pace." (DE 12 at 20). As support, Neal claims that "every job has the requirement that work be produced, so it is unclear what the ALJ meant by 'non-production pace.'" (*Id.* at 21). Neal further claims that all three jobs identified by the ALJ at step five that Neal could perform appear to be "production type jobs and would have a production pace to them." (*Id.* at 22). For legal support, Neal cites to *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019). In *Thomas*, the RFC stated, in part, "[s]he is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace." *Id.* at 310. The Commissioner argued that "production rate" is a common vocational limitation but the Fourth Circuit found that it is "difficult, if not impossible, for us to assess whether [its] inclusion . . . is supported by substantial evidence" without more elaboration. *Id.* at 312.

Defendant disagrees and provides a litany of cases that affirmed ALJ decisions where the RFC included the phrase "production pace" or "non-production pace." (DE 14 at 6–8). However, in the cases cited by Defendant, the plaintiffs argue that the ALJs failed to consider limitations in concentration, persistence, and pace when determining the RFC. The cases do not directly address the phrase "non-production pace" and whether ALJs have sufficiently defined it.

In the decision at issue here, the ALJ does not use any qualifiers or descriptors for "non-

6

production pace" in his RFC finding. Nor does the remainder of the ALJ's decision provide any further guidance on a "non-production pace." To determine whether this amounts to the RFC lacking substantial evidence, the case law is illuminative.

Recent decisions from the Fourth Circuit have examined the phrase "non-production pace" in RFC determinations. In *Sizemore v. Berryhill*, the Fourth Circuit affirmed an ALJ's decision where the RFC included a limitation to "work only in a low stress setting defined as non-production jobs without any fast-paced work and with no public contact." 878 F.3d 72, 79 (4th Cir. 2017). Finding the additional "descriptors" explained the restriction intended by the ALJ, the Court of Appeals could evaluate whether the limitation for non-production jobs adequately accounted for the claimant's limitations.

However, in *Thomas v. Berryhill*, which Neal cited to, the Fourth Circuit held that an RFC restricting a claimant from work "requiring a production rate or demand pace," where the ALJ failed to define the phrase, provided insufficient information to understand its meaning. 916 F.3d 307, 312 (4th Cir. 2019). The Fourth Circuit came to the same conclusion in *Perry v. Berryhill* when the ALJ "offered no explanation of her own for what she meant when she used the phrase "non-production oriented work setting." 765 Fed. Appx. 869, 872 (4th Cir. 2019) ("[W]e do not know what the ALJ intended when she used that phrase. As a result, it is difficult, if not impossible, to evaluate."). District courts within the Fourth Circuit have found similarly. *Hernandez v. Saul*, No. 3:19-CV-337-FDW, 2020 U.S. Dist. LEXIS 105296, at *13 (W.D.N.C. June 16, 2020) (J., Whitney) (remanding where "without any explanation, the Court cannot partake in any meaningful review of the ALJ's usage of the term 'non-production work setting' and any purported limitations imposed regarding Plaintiff's moderate limitations in concentration, pace, or persistence"); *Jenkins v. Saul*, No. 5:20-CV-00117-M, 2021 U.S. Dist. LEXIS 95278, *17 (E.D.N.C. April 28, 2021),

*M&R adopted by*, 2021 U.S. Dist. LEXIS 94696 (E.D.N.C. May 18, 2021) (J., Meyers) ("Because ALJ Preston did not further define non-production rate pace, a reviewing court cannot conduct a meaningful review of the phrase.").

As in *Thomas*, *Perry*, and other Fourth Circuit cases, the ALJ here did not further define non-production rate or provide any relevant descriptors as in *Sizemore*, and a reviewing court cannot conduct a meaningful review of the phrase. Thus, the Court is unable to conclude that the ALJ's RFC findings are supported by substantial evidence and remand is warranted for further consideration of this issue.

By ordering remand pursuant to sentence four of 42 U.S.C. § 405(g)[1], the Court does not forecast a decision on the merits of Plaintiff's application for disability benefits. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 11), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (DE 13), is **DENIED**; and

3. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

---

[1] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a rehearing." *Sullivan v. Finkelstein*, 496 U.S. 617, 625 (1990).

**SO ORDERED.**

Signed: January 31, 2022

*[Signature]*

Robert J. Conrad, Jr.
United States District Judge